UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BENJAMIN F. HOLLIS,

    Plaintiff,

v.                           Case No. 3:16-cv-1041-J-34JBT

P. CAZEE, et al.,

    Defendants.

## **ORDER**

### **I. Status**

This matter is before the Court on Defendants Olson, Adams, and Cazee's Amended Motion to Dismiss (Defendants' Motion; Doc. 25). Plaintiff filed his response in opposition to the Motion with exhibits (P. Ex.). See Plaintiff's Response in Opposition to Defendants' Amended Motion to Dismiss (Response; Doc. 27). Defendants' Motion is ripe for review.

### **II. Complaint**

In the Civil Rights Complaint Form (Complaint; Doc. 1), Hollis names the following individuals as Defendants: (1) A. Cazee;[1] (2) Gary Olson; and (3) D. Adams. He asserts that the Defendants

---

[1] See Order (Doc. 15) at 1, ¶ 1; Plaintiff's Motion to Amend (Doc. 14).

violated his Eighth Amendment right to be free from cruel and unusual punishment when they delayed his access to medical care for breathing difficulties associated with his asthmatic condition. He alleges that, on April 22, 2016, at approximately 11:00 a.m. at Florida State Prison, he had "breathing complications" from a sinus infection that ultimately triggered an asthma attack. Complaint at 7. He states that he used an inhaler numerous times, but it did not relieve his ailments. See id.

Hollis asserts that he stopped Defendant Olson during a 1:30 p.m. wing check and informed him that he was having an asthma attack. See id. at 7, 11. Hollis declared a medical emergency and showed Olson his Alvesco and Xopenex inhalers as an attempt to convince him that he was not faking an emergency. See id. at 11. According to Hollis, Olson walked away without any indication that he would call for medical assistance. See id. Hollis alleges that, during the 2:00 p.m. rounds, he stopped Defendant Cazee and informed him of his declared medical emergency. See id. Hollis told Cazee that his inhalers "were ineffective." Id. at 12. Hollis states that Cazee ignored him and walked away. See id. Hollis ultimately screamed for medical assistance, and several inmates acknowledged his suffering and yelled for help. See id. According to Hollis, Lieutenant Blitch promptly escorted Hollis at 3:40 p.m. to the medical clinic where medical assistant Smith and Nurse Pollard assessed his condition at 3:45 p.m. See id. at 12-13.

Hollis states that medical personnel gave him a Solu-Medrol shot to stabilize his breathing, a DuoNeb breathing treatment, and "several medications." Id. at 13. Medical personnel discharged Hollis at 5:45 p.m., and advised him to return if any symptoms recurred or worsened. See id.

According to Hollis, he declared another medical emergency at 8:15 p.m. due to a recurring asthma attack, and informed Defendant Adams who ignored his plea for help and left the area. See id. at 13-14. Hollis states that Adams later approached his cell at 9:00 p.m. and stated:

> I don't play that medical emergency s--t on my shift. But I called and spoke with Nurse Singletary. So you can thank her. [S]he had vouched for your condition. Said, she was present when you were brought up earlier, and was aware of your condition. One of my officers went to B-wing, though, to assist with the administering of chemical agents. You'll go whenever he come[s] back.

Id. The following morning at 12:30 a.m., Defendant Adams and Officer Mason escorted Hollis to the medical clinic where Nurse Reynolds assessed his condition at 12:35 a.m., and medical personnel provided another breathing treatment. See id. at 14. Hollis asserts that Dr. Laventure saw him on April 25, 2016, and opined that he suffered from an acute exacerbation of asthma and a sinus and lung infection. See id.

In the Complaint, Hollis asserts that he exhausted his administrative remedies. See id. at 1. He states that grievance coordinators Gibson and Dobbs "deliberately and intentionally destroyed" his inquiries and "every grievance" he filed pertaining to the April 22, 2016 incidents involving Defendants Olson, Adams, and Cazee. Id. at 1-2. According to Hollis, he submitted an emergency grievance of a medical nature on April 27, 2016. Id. at 2. Warden Palmer and Dobbs returned the grievance to Hollis on April 28th for non-compliance with Rule 33-103.014(1)(b) and (1)(t). See id. Hollis states that he submitted an informal grievance on May 6th and asserted that Defendants Cazee and Olson and Sergeant Wallace denied him access to medical care. See id. He amended the grievance on May 18th and May 30th to include Defendant Adams and Lieutenant Blitch. See id. He alleges that he inquired about the assigned log number on June 2nd and June 12th, but the grievance coordinator never replied. See id. Hollis asserts that he submitted a grievance of reprisal on June 6th and included allegations pertaining to Defendant Olson's involvement in the April 22nd incident; there was no reply. See id.

According to Hollis, he submitted a formal grievance (log number 1606-205-176) on June 17th to Warden Palmer and asserted that Gibson, the grievance coordinator, had thrown away his grievances; the Warden approved the grievance since the issue had been referred to the Inspector General for appropriate action. See

id. at 3. On June 20th, Hollis sent a letter to Florida Department of Corrections (FDOC) Secretary Julie Jones and addressed "these issues." Id. Hollis states that he submitted another formal grievance (log number 1606-205-209) to Warden Palmer and asserted that the grievance coordinator had violated his First Amendment right to complain about corrections officers through grievances. See id. He asserts that, when thirty working days had passed with no response to his May 6th informal grievance, he bypassed the "the institutional level," and submitted a formal grievance directly to the Secretary's Office on June 30th; he twice amended that grievance. Id.

### III. Summary of the Arguments

In Defendants' Motion, Defendants Olson, Adams, and Cazee assert that Hollis' claims against them should be dismissed because Hollis failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), before filing the 42 U.S.C. § 1983 lawsuit. They state that Hollis bypassed the second step (formal grievance to the Warden's office at the institution or facility level) of the FDOC grievance process, as required under Rule 33-103.006, and therefore he failed to properly exhaust his administrative remedies. See Motion at 12.

In response to Defendants' Motion, Hollis maintains that he exhausted his administrative remedies. In particular, he asserts that Rule 33-103.011(4) permitted him to bypass the first step

5

(informal grievance) of the FDOC grievance procedure since the institution failed to respond to his May 6th informal grievance within thirty working days. See Response at 4, 5-6. He states that he properly proceeded to the second step of the grievance process when he submitted a formal grievance (log number 1606-205-176) on June 17th to Warden Palmer and asserted that the grievance coordinator discarded his grievances and failed to adhere to Rule 33-103.006(9). See id. at 6; P. Ex. B, Request for Administrative Remedy or Appeal to the Warden, dated June 17, 2016. Accordingly, Hollis requests that the Court deny Defendants' Motion.

### IV. Exhaustion of Administrative Remedies

#### A. Exhaustion under the PLRA

Exhaustion of available administrative remedies is required before a 42 U.S.C. § 1983 action with respect to prison conditions may be initiated in this Court by a prisoner. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner such as Hollis is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); Jones, 549 U.S. at 211; Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is

mandatory.") (citation omitted). Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." Woodford, 548 U.S at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[2] 286 F.3d, at 1024. . . .

Id. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id. As such, the United States Supreme Court has emphasized:

> Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are "available."

Ross v. Blake, 136 S.Ct. 1850, 1862 (2016).

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant, 530 F.3d at 1374. The Eleventh Circuit

---

[2] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

has explained the two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081.[3] In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam).

**B. Exhaustion under Florida's Prison Grievance Procedure**

The FDOC provides an internal grievance procedure for its inmates. See FLA. ADMIN. CODE r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step process. First, an inmate must submit an

---

[3] Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008).

informal grievance to a designated staff member at the institutional level. See FLA. ADMIN. CODE r. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See FLA. ADMIN. CODE r. 33-103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the Secretary of the FDOC. See FLA. ADMIN. CODE r. 33-103.007.

However, under specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See FLA. ADMIN. CODE r. 33-103.005(1); 33-103.006(3). Or, an inmate can completely bypass the institutional level and proceed directly to the Office of the Secretary of the FDOC by filing a "direct grievance." See FLA. ADMIN. CODE r. 33-103.007(6). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the Secretary. Id. In a direct grievance to the Secretary, the inmate "must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal grievance steps of the institution or facility . . . ." FLA. ADMIN. CODE r. 33-103.007(6)(a)2. If the Secretary determines that the grievance does not qualify as one of the types of direct grievances described in the rule, the grievance must be returned to the inmate, stating the reasons for its return and advising the inmate to resubmit the

grievance at the appropriate level. See FLA. ADMIN. CODE r. 33-103.007(6)(d). If the grievance is returned to the institution or facility for further investigation or a response, the inmate may, after receiving the response, re-file with the Secretary if he is not satisfied with the response. See FLA. ADMIN. CODE r. 33-103.007(7).

Florida Administrative Code Rule 33-103.011 provides time frames for submission of grievances. Generally, the following time restraints are applicable. Informal grievances must be received within twenty days from the date on which the incident or action which is the subject of the grievance occurred. See FLA. ADMIN. CODE r. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See FLA. ADMIN. CODE r. 33-103.011(1)(b). Grievance appeals to the Office of the Secretary must be received within fifteen days from the date the response to the formal grievance is returned to the inmate. See FLA. ADMIN. CODE r. 33-103.011(1)(c). Additionally, Rule 33-103.011(4) provides:

> The time limit for responding to grievances and appeals may be extended for a reasonable period agreeable to both parties if the extension is agreed to in writing by the inmate. **Unless the grievant has agreed in writing to an extension, expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process.** If this occurs, the complainant must clearly indicate this fact when filing at the next step. If the inmate does not agree to an extension of time at the

> central office level of review, he shall be entitled to proceed with judicial remedies as he would have exhausted his administrative remedies. The Bureau of Policy Management and Inmate Appeals will nevertheless ensure that the grievance is investigated and responded to even though an extension has not been agreed to by the inmate.

FLA. ADMIN. CODE r. 33-103.011(4) (emphasis added).

According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more ... conditions are found to exist." FLA. ADMIN. CODE r. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See FLA. ADMIN. CODE r. 33-103.014(1)(a)-(x). Some of the reasons for returning a grievance are as follows: the grievance "addresses more than one issue or complaint" or "is so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to" or "is not written legibly and cannot be clearly understood"; the inmate "did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable," or "used more than two (2) additional narrative pages." See FLA. ADMIN. CODE r. 33-103.014(1)(a), (b), (c), (f), (t).

## C. Analysis of Hollis' Efforts to Exhaust

In the Complaint, Hollis asserts that the Defendants delayed his access to medical care for breathing complications related to his asthmatic condition. Also, he avers that he fully exhausted his claims through completion of the administrative grievance process. Nevertheless, Defendants maintain that the Court should dismiss the claims against them because Hollis failed to exhaust his administrative remedies, as required by the PLRA, before filing the 42 U.S.C. § 1983 lawsuit.

As the initial step in the two-part process for deciding motions to dismiss for failure to exhaust under the PLRA, the Eleventh Circuit has instructed:

> District courts first should compare the factual allegations in the motion to dismiss and those in the prisoner's response and, where there is a conflict, accept the prisoner's view of the facts as true. "The court should dismiss if the facts as stated by the prisoner show a failure to exhaust." Id.[4]

Pavao, 679 F. App'x at 823-24. Here, the facts asserted in the Defendants' Motion and Hollis' Response "are not in material conflict," id. at 824, and they demonstrate that Hollis did not complete the administrative process in accordance with the applicable grievance procedures set forth in § 33-103 of the Florida Administrative Code.

---

[4] Whatley, 802 F.3d at 1209.

It is apparent from Hollis' allegations and evidence as well as the Defendants' assertions that Hollis did not comply with the sequential three-step grievance procedure as to his allegations against Defendants Olson, Adams, and Cazee. See Dimanche v. Brown, 783 F.3d 1204, 1211 (11th Cir. 2015) ("In Florida, a prisoner must: (1) file an informal grievance with a designated prison staff member; (2) file a formal grievance with the institution's warden; and then (3) submit an appeal to the Secretary of the FDOC."). Hollis submitted an informal grievance on May 6, 2016, and asserted that Olson, Adams, and Cazee denied him access to medical care. See Complaint at 2; Response at 3. In the Complaint, Hollis states that he bypassed review at the institutional level because the grievance coordinator allegedly discarded the grievance and never replied to his inquiries, and the response time had expired. See Complaint at 2-3. In his Response, he maintains that he therefore properly bypassed the first step (referred to as "the informal grievance phase") in accordance with Rule 33-103.011(4),[5] and thereafter submitted his June 17, 2016 formal grievance to the Warden. Response at 5-6 (citing P. Ex. B).

---

[5] Rule 33-103.011(4) provides in pertinent part:

> Unless the grievant has agreed in writing to an extension, expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process. If this occurs, the complainant must clearly indicate this fact when filing at the next step.

13

In the Request for Administrative Remedy or Appeal to Warden Palmer, Hollis asserted that Grievance Coordinator Gibson failed to adhere to Rule 33-103.006(9).[6] The formal grievance reads:

Against Grievance Coordinator Gibson.

In compliance with Rule 33-103.006, **I am submitting this formal grievance against the designated grievance coordinator: for failing to adhere to Rule 33-103.006(9) in violation of the grievance process procedure.**

On 6/6/16 grievant submitted to Ms. Pageant: staff designated to place grievances in the lock box 1.) an informal grievance against Officer Olson and Sergeant Bracewell 2.) an informal grievance against Sergeant Bracewell 3.) a grievance of reprisal against Officer Olson, whom I had wrote an informal grievance on, on 5/6/16: for denying me access to medical for a serious medical need; a grievance I amended twice within the allotted timeline and the grievance has yet to be returned.

I made mention of this, as I laid out my argument against this officer for the recent disciplinary reports, claiming that these D.R.s were acts of reprisal for the informal grievance I had addressed to you i.e. Warden Palmer against this staff member on 5/6/16.

---

[6] Rule 33-103.006(9) provides:

If an inmate is in a special housing unit and wants to file a grievance, he shall submit the grievance to designated staff by placing the grievance in a locked box. The designated staff person shall deliver the box to the institutional grievance coordinator who will unlock the box, remove the grievances, log the grievances, and provide the inmates with receipts.

14

> Per subsection 33-103.006(9) the institutional grievance coordinator will unlock the box, remove the grievances, log the grievances, and provide the inmate with receipts. 72 hours from the day of reception, a receipt shall be provided to the inmate. The date is 6/16/16. At approximately 6:40 p.m. mail was distributed on B-wing. I didn't not [sic] receive any. The grievance coordinator has yet to send me a receipt of my grievance of reprisal signed and dated 6/6/16. I am grieving to have my receipt issued. As stated per the rule.
>
> If this grievance comes up missing, as I have suspected for quite some time that all the others, as well as (2) request [sic] I wrote to Coordinator Gibson asking for the grievance log number to the grievance I filed on 5/6/16, has, I will be petitioning the Courts: for a Motion to Show Cause per the law. You will have to come up with those grievances, and receipts. . . .

P. Ex. B, Request for Administrative Remedy or Appeal, Log Number 1606-205-176, dated June 17, 2016 (emphasis added).[7]

---

[7] Grievance Coordinator A. Dobbs responded:

> Your request for administrative remedy has been reviewed and evaluated. The issue of your complaint has already been referred to [the] Office of the Inspector General for appropriate action.
>
> As action has been initiated, you may consider your request for administrative remedy approved from that standpoint.
>
> Note: An incident report has already been submitted on the allegations from informal #205-1606-0264.

P. Ex. B, Part B - Response, dated June 24, 2016.

15

Undoubtedly, Hollis proceeded to the second step in the grievance process when he filed the formal grievance to the Warden, as evidenced by his exhibit. See P. Ex. B. However, the formal grievance addressed issues related to Grievance Coordinator Gibson's failure to abide by Rule 33-103.006(9). Hollis failed to address the April 22, 2016 events involving Defendants Olson, Adams, and Cazee. Therefore, Hollis' efforts were not sufficient to properly exhaust his claims against the Defendants in that he bypassed the required second step in the grievance process. He failed to sequentially proceed through the three-step process in addressing the April 22, 2016 events involving Defendants Olson, Adams, and Cazee. As Hollis initially explained in his Complaint, he bypassed "the institutional level" after thirty working days had expired with no response to his May 6th informal grievance, and submitted a formal grievance directly to the Secretary's Office on June 30th. Complaint at 3, ¶12. Accordingly, Defendants' Motion is due to be granted.[8]

---

[8] The Defendants also assert that Hollis fails to state a claim upon which relief may be granted, and they are entitled to qualified and Eleventh Amendment immunities. See Motion at 13-22. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant, 530 F.3d at 1374. Therefore, the Court will not address Defendants' other arguments since Hollis' claims against them are due to be dismissed for Hollis' failure to exhaust.

Therefore, it is now

**ORDERED**:

1. Defendants Olson, Adams, and Cazee's Amended Motion to Dismiss (Doc. 25) is **GRANTED** for Plaintiff's failure to properly exhaust the prison's administrative remedies as to his claims against the Defendants.

2. Plaintiff's claims against Defendants Olson, Adams, and Cazee are **DISMISSED**.

3. The Clerk shall enter judgment dismissing this case and terminating any pending motions.

4. The Clerk shall close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of January, 2018.

MARCIA MORALES HOWARD
United States District Judge

sc 1/10
c:
Benjamin F. Hollis, FDOC #184373
Counsel of Record